Jennifer Lee HIATT, Plaintiff–Appellant,

v.

INDIANA STATE STUDENT ASSISTANCE COMMISSION, Defendant–Appellee.

No. 93–4050.

United States Court of Appeals, Seventh Circuit.

Argued May 9, 1994.

Decided Sept. 15, 1994.

Joni M. Anderson (argued), Indiana State Student Assistance Comm'n, Indianapolis, IN, for appellee.

Ray B. Merritt (argued), LaFayette, IN, for debtor-appellant.

Before MESKILL,* FLAUM, and MANION, Circuit Judges.

MESKILL, Circuit Judge.

This appeal requires the Court to determine the commencement date of the period of nondischargeability imposed by 11 U.S.C. § 523(a)(8)(A), for student loans, where the original loans have been superseded by a consolidation loan obtained pursuant to 20 U.S.C. § 1078-3. Section 523(a)(8)(A) provides that an individual debtor shall not be discharged from any debt "for an educational loan made, insured, or guaranteed by a governmental unit ... unless ... such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the [bankruptcy] petition."[1] The appellant, Jennifer Lee Hiatt, challenges the determination by the United States District Court for the Northern District of Indiana, Sharp, *C.J.*,

that Hiatt's educational debt is nondischargeable because the nondischargeability period begins on the date on which the consolidation loan first became due. We affirm the judgment of the district court.

## BACKGROUND

Between 1983 and 1985, Hiatt obtained several educational loans from the appellee, Indiana State Student Assistance Commission (Commission), which has been designated by the United States Department of Education (Department of Education) to guarantee educational loans. Hiatt's educational loans first became due on January 5, 1986. On July 23, 1987, Hiatt voluntarily consolidated the loans pursuant to a Department of Education loan consolidation program. *See* 20 U.S.C. § 1078-3 (describing loan consolidation program). The consolidation entailed taking a new "consolidation loan" from the Commission, the proceeds of which were used to repay in full Hiatt's original educational loans. *See id.* § 1078-3(b)(1)(D). Payments on Hiatt's consolidation loan first became due on or about September 20, 1987. Less than four years later, on May 24, 1991, Hiatt filed a bankruptcy petition pursuant to Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 701 *et seq.*

In conjunction with her petition, Hiatt filed an adversary complaint against the Commission, seeking a determination that her educational debt was dischargeable under section 523(a)(8)(A). Hiatt contended that her debt was dischargeable because she had filed her bankruptcy petition after the nondischargeability period for the original loans had expired, even though she had consolidated her loans within the nondischargeability period.

On Hiatt's motion for summary judgment, the bankruptcy court held that the debt was not dischargeable, and determined that Hiatt owed the Commission $12,051.55. Hiatt appealed the bankruptcy court's decision to the

---

* Honorable Thomas J. Meskill, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. After the appellant had filed her Chapter 7 bankruptcy petition, an amendment to section 523(a)(8)(A), increasing the nondischargeability period to seven years, became effective. The parties agree that this amendment does not apply in this case.

district court, *see* 28 U.S.C. § 158(a), which affirmed. Hiatt now appeals the district court's judgment pursuant to 28 U.S.C. § 158(d) and 1294(*l*).

## DISCUSSION

■ In urging reversal of the district court, Hiatt contends that the court erred in holding that her educational debt is not dischargeable under section 523(a)(8)(A). Hiatt relies primarily on the legislative history of section 523(a)(8)(A) and on a series of decisions that she contends supports her claim that the date on which the nondischargeability period commences is the date on which the educational loan originally became due, regardless of the date on which a subsequent consolidation loan first became due. The Commission contends, on the other hand, that the plain language of section 523(a)(8)(A) supports the district court's decision and argues that, if we were to adopt the debtor's argument, Congress' goal of providing a stable and viable student loan program would be frustrated. We review *de novo* the district court's interpretation of section 523(a)(8)(A). *See Woodbridge Place Apartments v. Washington Square Capital,* 965 F.2d 1429, 1435 (7th Cir.1992).

To determine the date on which the nondischargeability period begins to run pursuant to section 523(a)(8)(A), we look first to the language of that provision. *See Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). In interpreting this provision of the Bankruptcy Code, however, "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object

and policy." *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). The plain language of the statute will not control, therefore, if it yields " 'a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enters.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

■ Section 523(a)(8)(A) provides that the debt relating to a government guaranteed educational loan is not dischargeable until five years after *"such loan* first became due." (emphasis added). The term "such loan" refers in this case to the consolidation loan, which Hiatt concedes is an educational loan within the meaning of section 523(a)(8)(A). Indeed, when Hiatt "consolidated" her educational debt in 1987, she undertook a new loan from the Commission, the proceeds of which were used to repay in full her original educational loans. *See* 20 U.S.C. § 1078–3(b)(1)(D). The notes on her original loans were cancelled and the debt discharged. The only outstanding debt that Hiatt currently owes to the Commission, therefore, is the new, distinct debt incurred when she took the consolidation loan.[2] Because that loan "first became due" less than five years before Hiatt filed her bankruptcy petition, section 523(a)(8)(A) provides that the debt is nondischargeable. *See also, e.g., McKinney II,* 1992 WL 265992, *2–3, 1992 U.S. Dist. Lexis 14796, at *6–*7; *In re Martin,* 137 B.R. 770, 772 (Bankr.W.D.Mo.1992); *In re Saburah,* 136 B.R. at 252.

■ Hiatt challenges such an interpretation of the plain language of section 523(a)(8)(A) by arguing that it conflicts with

2. The commission additionally argues that 20 U.S.C. § 1078–3(d) requires that we treat the consolidation loan as a new loan for purposes of measuring the nondischargeability period. Section 1078–3(d) provides that "[l]oans made under this section which are insured by the Secretary shall be considered to be new loans made to students for the purpose of section 1074(a) of this title [which limits total principal amount of new loans to students covered by federal loan insurance]." We need not address this argument because we conclude that, by virtue of its statutorily prescribed operation, *see, e.g.,* 20 U.S.C. § 1078–3(b)(1)(D), the consolidation loan is a

new loan creating new debt. *Compare In re McKinney,* 1992 WL 265992, *2–3, 1992 U.S.Dist. Lexis 14796, at *7 (N.D.Ohio 1992) (*McKinney II*) (relying on section 1078–3(d) to conclude that consolidation loan is a "new loan" and that nondischargeability period begins to run on day consolidation loan first became due), *rev'g In re McKinney,* 120 B.R. 416 (Bankr.N.D.Ohio 1990) (*McKinney I*), *with In re Saburah,* 136 B.R. 246, 251 (Bankr.C.D.Cal.1992) (holding that nondischargeability period begins to run on day consolidation loan first becomes due, but declining to rely on section 1078–3(d)).

the congressional intent underlying that provision. Although the Bankruptcy Code generally seeks to provide a Chapter 7 debtor with a "fresh start" by discharging the debtor's debts, *see Levinson v. United States,* 969 F.2d 260, 263 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992), Congress has designated some debts as nondischargeable in bankruptcy. *See, e.g.,* 11 U.S.C. § 523(a)(5) (alimony and child support payments); *id.* § 523(a)(6) (liability incurred as a result of the debtor's willful and malicious conduct). Congress created these exceptions to the general rule of dischargeability on the ground that "the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

Congress included government guaranteed educational loans in the group of presumptively nondischargeable debts because it believed that many student borrowers were abusing the "fresh start" policy by filing for bankruptcy and obtaining discharge of educational debt soon after graduation, before making any significant attempts at repayment. *See In re Nunn,* 788 F.2d 617, 619 (9th Cir.1986); *see also 3 Collier on Bankruptcy* § 523.18, at 523–148 & n. 2 (15th ed. 1985) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1979)). Congress permitted the discharge of educational debt, however, if the bankruptcy petition was filed at least five years after the loans first became due. *See also* 11 U.S.C. § 523(a)(8)(B) (creating undue hardship exception to nondischargeability provision). The enactment of the five year nondischargeability period thus reflected the congressional purpose of shielding the government guaranteed educational loan program from opportunities for abuse.

Although the district court's interpretation might, as argued by Hiatt, serve to extend the total nondischargeability period significantly in some cases by effectively restarting it at the time the subsequent consolidation loan first becomes due, such extension of the nondischargeability period does not render that interpretation "demonstrably at odds with" Congress' intent to curtail abuse and to promote the viability of the federal student loan program. *See Ron Pair Enters.,* 489 U.S. at 242, 109 S.Ct. at 1031. Rather, the district court's interpretation furthers the congressional policy by ensuring that a consolidation loan, which is in fact a second government guaranteed student loan debt, is collectible for at least five years before it is dischargeable.

Finally, the cases cited by Hiatt do not persuade us that the district court's interpretation of the plain meaning of section 523(a)(8)(A) is improper. Many of those cases did not address the specific issue before us here and, therefore, are not useful. *See, e.g., Nunn,* 788 F.2d at 619 (court considered whether the "first became due" language in section 523(a)(8)(A) referred to the date on which the educational loan first entered the repayment stage or the date of the debtor's last actual installment payment); *In re Ziglar,* 19 B.R. 298, 300 (Bankr.Ed.Va. 1982) (dispositive issue is whether a particular loan is an "educational loan" within the meaning of section 523(a)(8)(A)); *In re Brown,* 4 B.R. 745, 746 (Bankr.E.D.Va.1980) (court determined that five year nondischargeability period begins to run on the date on which a student borrower's original notes first came due, not the date of default on a subsequent installment note, at which point the entire balance came due). Moreover, several cases cited by Hiatt discuss whether an alteration of the terms of an educational loan constituted a "suspension of the repayment period" within the meaning of section 523(a)(8)(A). *See, e.g., In re Gremler,* 127 B.R. 202, 204 (Bankr.E.D.Wis.1991); *In re Barciz,* 123 B.R. 771, 773 (Bankr.N.D.Ohio 1990). Here, however, Hiatt's loan consolidation did not effect an alteration of the terms of her original loans, but rather extinguished her original loans and replaced them with a new loan.

Although one bankruptcy court case cited by Hiatt does provide direct support for her position, *see McKinney I,* 120 B.R. at 420–21, we are not persuaded by that court's reasoning, nor was the district court that reviewed the decision. *See McKinney II,* 1992 WL 265992, at *2–3; 1992 U.S.Dist. LEXIS 14796,

at *6–*7, *rev'g McKinney I*, 120 B.R. at 420–21. The *McKinney I* bankruptcy court failed to consider that, when a borrower undertakes a consolidation loan, the original loan is repaid in full and the debt is discharged, and also that section 523(a)(8)(A) provides for discharge of a debt only if the loan relating to *that* debt "first became due" more than five years prior to the bankruptcy filing.

■ We conclude that, in cases in which a debtor has consolidated her educational loans pursuant to 20 U.S.C. § 1078–3, the plain language of section 523(a)(8)(A) requires that the nondischargeability period commences on the date on which the consolidation loan first became due. Because Hiatt's consolidation loan first became due within five years of the filing of her bankruptcy petition, her debt to the Commission is not dischargeable under section 523(a)(8)(A).

### CONCLUSION

The judgment is affirmed.