In re FLINT, Susan, Debtor.

**United Student Aid Funds, Appellant,**

v.

**Susan Marie Flint, Appellee.**

No. 99–CV–73382–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 27, 1999.

Paul I. Bare, Traverse City, MI, for plaintiffs.

Todd D. Chamberlain, Howard & Howard, P.C., Lansing, MI, for defendants.

## ORDER REVERSING THE BANKRUPTCY COURT'S "OPINION ON WHETHER A CONSOLIDATION LOAN IS AN EDUCATIONAL LOAN"

CLELAND, District Judge.

### I. Background

Appellee Susan Flint borrowed money from Southwest Student Services Corporation on two occasions to finance her education. Then, on December 15, 1995, she executed a promissory note issued under the provisions of the Higher Education Act with Arizona Educational Loan Marketing Corporation ("AELMAC"), for the amount of $4,422.70, to consolidate her existing student loans from the Department of Education. Appellant, United Student Aid Funds ("United") acquired the rights to the promissory note held by AELMAC as part of a guarantee obligation.

Flint filed for Chapter 7 protection in February 1996. The bankruptcy court determined that the AELMAC loan was not an "education loan" for purposes of 11 U.S.C. § 523(a)(8) and, therefore, was not excepted from discharge by operation of § 523(a)(8). The sole issue on appeal is whether a loan issued to an eligible borrower for consolidation of pre-existing student loan obligations in accordance with the Higher Education Act of 1965 constitutes a debt which is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

### II. Standard

The bankruptcy court's conclusions of law are reviewed *de novo*. *De novo* review requires this court to interpret statutes independently from the determinations of the bankruptcy court. Thus, the bankruptcy court's interpretation of § 523(a)(8) and determination that the loan at issue is not an "educational loan" is reviewed anew by this court without deference to the reasoning set forth by the bankruptcy court. *See In re Rudnicki*, 228 B.R. 179, 180 (6th Cir. BAP 1999).

### III. Discussion

The question before this court is whether the consolidated loan at issue is an "educational loan" pursuant to 11 U.S.C. § 523(a)(8). The court begins with the plain language of the applicable statute. Section 523 provides as follows:

(a) A discharge under § 727 ... of this Title does not discharge an individual debtor from any debt—

. . .

(8) for an educational benefit, overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

11 U.S.C. § 523(a)(8).

If the consolidated loan at issue is an "educational loan" for purposes of § 523(a)(8), the loan is nondischargeable because the consolidated loan payments began less than seven years before the bankruptcy filing. United argues that because the consolidated loan was issued pursuant to the Higher Education Act and was derived from the same funding sources as the original student loans, the consolidated loan comes within the operation of § 523. (Def.Br. at 8–9.) Additionally, United argues that treating consolidated loans differently from originally-

issued student loans creates a method by which student debtors can abuse the government subsidized loan program and prevent funds from being available for future student borrowers. (*Id.* at 12.) Finally, United asserts that the loan was for an educational purpose in that Flint could not have repaid her original student loans but for the consolidation loan. (*Id.* at 16.)

Flint, on the other hand, presents no additional arguments beyond those presented in the bankruptcy court's analysis. She asserts that Congress could have included language in § 523(a)(8) indicating that consolidation loans are nondischargeable, and notes that said language is not contained in the statute. (Pl.Br. at 8.) She quotes the bankruptcy court's holding that § 523 must be construed in her favor and in light of the public policy favoring an "honest debtor's fresh start." (*Id.*) The fact that United made the loan pursuant to the Higher Education Act does not, according to Flint, support United's theory that consolidation loans under the Act are equally nondischargeable by analogy to original student loans under the Act. (*Id.* at 9.) Finally, Flint asserts that future abuse on the part of student debtors is speculative and an issue for Congress to address through amendment rather than a matter for the courts to remedy through statutory interpretation. (*Id.*)

For the following reasons, the court finds that the consolidation loan at issue is an "educational loan" for purposes of 11 U.S.C. § 523(a)(8) dischargeability analysis. First, numerous courts have applied § 523(a)(8) non-dischargeability provision to consolidated loans. Second, there is widely recognized legislative history indicating that § 523(a)(8) was intended to curb the dischargeability of loans for educational purposes. Third, the character of the loan dictates that it was issued for educational purposes.

### A. Application of § 523(a)(8) to consolidated loans

The majority of cases discussing § 523(a)(8) concern the time from which the seven years (or in earlier cases, five years) begins to run. Courts have roundly agreed that the act of consolidating student loans creates a new loan which pays off the original loans and begins the seven year clock anew. *See Rudnicki,* 228 B.R. at 181 (finding "a majority of courts [have] held that a consolidated student loan is a new loan for purposes of § 523(a)(8)(A)") (collecting case); *see also Hiatt v. Indiana State Student Assistance Comm.,* 36 F.3d 21, 25 (7th Cir.1994) (holding that where a debtor has consolidated her educational loans, § 523(a)(8)(A) requires that the non-dischargeability period commences on the date on which the consolidation loan first became due); *In re White,* 229 B.R. 34, 37–38 (Bankr.M.D.Fla.1999) (collecting cases); *In re Mattingly,* 226 B.R. 583, 585 (Bankr.W.D.Ky.1998) (holding that "based on the plain language of § 523(a)(8)(A), the relevant date for purposes of determining dischargeability is the date when the consolidated loan first became due"); *In re Meeker,* 225 B.R. 910, 912 (Bankr. N.D.Ohio 1998) (collecting cases that hold that consolidating student loans resets the seven year clock); *In re Stricklen,* 224 B.R. 905, 907 (Bankr.E.D.Ark.1998) (stating that there is uniform and well-settled authority interpreting 523(a)(8)); *In re Cobb,* 196 B.R. 34, 37 (Bankr.E.D.Va.1996) (stating that a consolidation loan is essentially "a second government guaranteed student loan" that is collectible for at least seven years before it is eligible for discharge under bankruptcy); *In re Hesselgrave,* 177 B.R. 681, 683–84 (Bankr.D.Or. 1995). This point is not disputed and the bankruptcy court held that the consolidated loan at issue is a new loan which first became due less than seven years before the bankruptcy was filed.

If consolidation loans were not "educational loans" for purposes of § 523(a)(8), then this body of case law would be based on a faulty assumption, that is that consolidated loans are "educational loans" to which § 523(a)(8) applies. *See Rudnicki,* 228 B.R. at 181 (holding that the only

student loan debt owed was the consolidated loan and since it first became due within seven years of bankruptcy, it was not dischargeable under § 523(a)(8)); *Hiatt*, 36 F.3d at 24 (stating that a consolidation loan is in fact a second government guaranteed student loan debt which is collectible for at least five years); *In re Graddy*, 1998 WL 661457 (W.D.Tenn.1998) (holding that "the student loan represented by the consolidation loan remains nondischargeable under § 523(a)(8)(A)"). "It would be inequitable to allow the debtor to do away with the troublesome features of the original loans and accept the benefits of consolidation and then still be able to use the favorable repayment dates for bankruptcy purposes." *Cobb*, 196 B.R. at 38. "A finding that a consolidation loan does not restart the nondischargeability period would inappropriately focus student loan borrowers on the possibility of discharging their loans rather than on the importance of repaying them." *In re Hull*, 223 B.R. 876, 879 (Bankr.W.D.N.Y.1998). The fact that courts have analyzed 523(a)(8) in an effort to determine when the statute of limitations begins to run for a consolidated student loan—from the due date of the original student loan or the due date of the subsequent consolidated loan—would be meaningless if consolidated student loans were not "educational loans" for purposes of § 523(a)(8).

### B. Purpose of § 523(a)(8)

Congress enacted § 523 for the purpose of exempting certain debts, such as educational loans, from discharge. *See Hiatt*, 36 F.3d at 24 (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Section 523(a)(8) has been amended several times in an apparent effort to keep fluid the student loan system. *See Andersen v. UNIPAC–NEBHELP*, 179 F.3d 1253, 1260 (10th Cir.1999) (stating that "Congress has sought to progressively limit the instances in which student loan debts may be discharged in bankruptcy"). Section 523(a)(8) was amended in 1990 to increase by two years, from five to

seven years, the time period before which a student loan is nondischargeable. *See* 11 U.S.C. § 523(a)(8)(A); Pub.L. No. 101–647 (1990). Section 523(a)(8) was again amended in 1998 to eliminate the seven year rule in all cases filed after October 7, 1998. *See* 11 U.S.C. § 523(a)(8) (Supp. 1999); Higher Education Amendments of 1998, Pub.L. No. 105–244, Title IX, § 971(a), 112 Stat. 1581, 1837 (1998). At present, the only exception to nondischargeability is undue hardship. *See Andersen*, 179 F.3d at 1256 n. 3.

Courts have looked to this series of amendments as an indication of Congress' strong policy favoring the repayment of student loans. *See id.* at 1259 (recognizing a clear congressional desire to "restrict dischargeability" in educational loans).

Congress passed a series of amendments to section 523(a)(8)(A) which extended its reach from educational loans to educational benefits. The amendments also extended the protection afforded under section 523(a)(8)(A) to any lender, in certain limited circumstances. Metaphorically speaking, the modification process not only expanded subsection (8) to catch more fish in its nondischargeability net, but has also narrowed the subsection to keep them from escaping.

*Santa Fe Medical Services, Inc. v. Segal*, 57 F.3d 342, 348–49 (3rd Cir.1995)

Courts have interpreted the legislative history as attempting to accomplish two tasks: (1) to safeguard the financial integrity of the educational loan program, and (2) to curb abuses by limiting the instances in which student loans can be discharged in bankruptcy. *See id.* (acknowledging that § 523(a)(8) was enacted to "remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs"); *In re McFadyen*, 192 B.R. 328, 331 (Bankr.N.D.N.Y. 1995) (explaining that § 523 was "enacted

to curb the abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs"); *Cobb,* 196 B.R. at 37 (stating that Congress enacted § 523 to contribute to "the continued credibility and stability of the student loan program which would in turn ensure its viability"). Section 523(a)(8) represents Congress' "effort to reduce defaults by making repayment terms sensitive to the borrower's financial situation" and attempts to insure "that debtors have made a good faith effort to pay off a significant portion of the balance on student loans before filing bankruptcy." *In re Martin,* 137 B.R. 770, 774–75 (Bankr.W.D.Mo. 1992). Courts have acknowledged that were § 523(a)(8) not interpreted to uphold these goals, "a student could obtain a loan, avoid repayment while in school, wait until the first payment became due, obtain forbearances, at some point consolidate and drastically reduce the monthly payment, obtain forbearances on the consolidation loan, then once the § 523(a)(8)(A) period ended, file a bankruptcy petition." *In re Saburah,* 136 B.R. 246, 251 (Bankr.C.D.Ca. 1992).

In addition, courts have reasoned that Congress' desire to curb abuse of the educational loan program takes precedence over the debtor's right to achieve a "fresh start." *See Hiatt,* 36 F.3d at 24 (stating that Congress believed "many student borrowers were abusing the 'fresh start' policy by filing for bankruptcy and obtaining discharge of educational debt soon after graduation, before making any significant attempts at repayment").

Although the fresh start policy is undeniably an important aspect of bankruptcy law, Congress made its intent to give force to countervailing public policies clear in its adoption of the nondischargeability provision of § 523. Congress excepted certain debts from discharge on the ground that 'the creditors' interest in recovering full payment of debts in these categories [of § 523] outweighed the debtors' interest in a complete fresh start.

*Meeker,* 225 B.R. at 913 (citing *Hiatt,* 36 F.3d at 24).

Congress elected to exclude certain obligations from the general policy of discharge based upon the conclusion that the public policy in issue, availability and solvency of educational loan programs for students, outweighs the debtor's need for a fresh start.

*In re Merchant,* 958 F.2d 738, 740 (6th Cir.1992).

## C. Character of Consolidation Loan

■ The character of a loan should dictate how it is treated. *Segal,* 57 F.3d at 349. Thus, examining merely the identity of the borrower or the purpose for which the money was actually used is an improper focus. *See id.; In re Salter,* 207 B.R. 272, 275 (Bankr.M.D.Fla.1997).

Courts have reasoned that a consolidation loan is "for an educational purpose" because the loan was issued under the Higher Education Act. *See Martin,* 137 B.R. at 773 (holding "it is necessary only to determine that the loan at issue here is an educational loan because it is one governed by the Higher Education Act. With that finding, the dischargeability provision of [§ 523(a)(8)] apply"). Courts have also recognized that the act of consolidation benefits the debtor by changing payment terms and creating a new obligation relative to the reason for the debt, which was an educational benefit. *Cobb,* 196 B.R. at 37–38 (stating that a consolidation loan is essentially "a second government guaranteed student loan"); *see also Rudnicki,* 228 B.R. at 181 (finding that "the only student loan debt owed by Rudnicki at the bankruptcy petition was the consolidated loan"); *Segal,* 57 F.3d at 349 n. 8 (stating that courts have routinely viewed consolidations loans as educational loans within the meaning of § 523(a)(8)); *but cf. McFadyen,* 192 B.R. at 332 (holding loan

was inextricably tied to debtor's employment and was therefore not for educational purposes); *cf. Segal,* 57 F.3d at 349 (holding that the loan had the nature and character of a "buyout" because it was made solely for the purpose of enticing Dr. Crowe to accept employment by providing a means for her to repay her educational obligations created by a scholarship).

Unlike other loans made for consideration, educational loans are issued on the assumption that the borrower will have sufficient income to repay the debt following graduation. *See Merchant,* 958 F.2d at 740. The loan at issue required no collateral, was unsecured, and was issued pursuant to the provision of the Higher Education Act. The fact that the loan provided payment conditions that benefitted Flint is in line with the congressional intent to favor and facilitate the repayment of student loans rather than to encourage defaulted loans that jeopardize the program's solvency. A consolidated loan enables the student borrower more easily to bear the burden and to continue to honor her financial obligation after her education is completed, and not coincidently increases the chances of repayment with obvious benefit to the systems as a whole.

Flint argues that if Congress intended to exempt consolidated loans, it would have specifically so stated. The court finds that is too narrow a perspective. Courts have applied § 523(a)(8) even when the loan was not used to confer an educational benefit on the borrower. *See In re Hawkins,* 139 B.R. 651, 652 (Bankr.N.D.Ohio 1991). The court reasoned that to hold otherwise would create a loophole enabling students to obtain educational loans through a parent who could then easily discharge the debt in bankruptcy; such a result would jeopardize the integrity and solvency of the educational loan program. *See id.* at 653. The court is not persuaded by Flint's argument that since the loan did not directly pay for schooling, the consolidated loan in this case conferred merely the financial benefit of debt reduction. *See*

*Hawkins,* 139 B.R. at 652–53. The character of the consolidated loan in this case shows that it was made for, and utilized for, an educational purpose.

### D. Summary

Congress set forth, through § 523(a)(8), that a debt is nondischargeable if: (1) it is an educational loan, (2) made as part of a program, (3) by a nonprofit institution. The only element at issue on appeal is whether AELMAC made an "educational loan." Based on the above analysis the court finds that the consolidation loan at issue is an "educational loan" for purposes of 11 U.S.C. § 523(a)(8). Therefore, the ruling of the bankruptcy court must be reversed.

### IV. Conclusion

Accordingly, IT IS ORDERED that the bankruptcy court's "Opinion on Whether a Consolidation Loan is an Educational Loan" is REVERSED.

IT IS FURTHER ORDERED that he bankruptcy court's judgment discharging the AELMAC loan because it was not an educational loan for purposes of 11 U.S.C. § 523(a)(8) is REVERSED.

IT IF FURTHER ORDERED that this case be REMANDED to the bankruptcy court for further proceeding consistent with this court's ruling.