In re Laura A. LEVERNIER, Debtor.

Laura A. Levernier, Plaintiff,

v.

Student Loan Marketing Association and United States Department of Health and Human Services, Defendants.

United States of America on Behalf of the United States Department of Health and Human Services, Counterclaimant,

v.

Laura Ann Levernier, Counterdefendant.

Bankruptcy No. SA 97–20888 JR.
Adversary No. SA 98–1306 JR.

United States Bankruptcy Court, C.D. California.

Dec. 3, 1999.

William M. Burd, Burd & Naylor, Santa Ana, CA, for debtor.

Wayne S. Basist, Law Offices of Samaha Grogin, LLP, Pasadena, CA, for defendant.

## OPINION

JOHN E. RYAN, Bankruptcy Judge.

### I. INTRODUCTION

On April 20, 1998, Laura A. Levernier ("Debtor") filed a complaint (the "Complaint") to determine the dischargeability of a consolidation loan (the "Consolidation Loan") pursuant to 11 U.S.C. § 523(a)(8) [1] against the Student Loan Marketing Association ("Sallie Mae") and the United States Department of Health and Human Services.

On July 15, 1999, Debtor filed a motion for judgment on the pleadings (the "Motion"), contending in the alternative that (1) the Consolidation Loan is not a student loan covered by § 523(a)(8) and (2) the seven-year period of nondischargeability is calculated from the dates the original student loans first came due and not the date the Consolidation Loan first came due. After a hearing on the Motion, I took the matter under submission.

### II. JURISDICTION

I have jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(1). This is a core proceeding under the Bankruptcy Code, as defined in 28 U.S.C. § 157(b)(2)(I).

### III. STATEMENT OF FACTS

In September 1983, Debtor began a full-time course of study at Life Chiropractic West ("Life Chiropractic") to become a chiropractor. While at Life Chiropractic,

Debtor took out four student loans from Wells Fargo Bank (the "Student Loans") that were guaranteed by the California Student Aid Commission ("CSAC"), which is a guaranty agency [2] within the scope of the Higher Education Act of 1965.[3] The dates and principal amounts of the Student Loans are as follows:

| Date | Amount |
|---|---|
| September 6, 1983 | $ 2,500. |
| February 29, 1984 | $ 2,500. |
| November 28, 1984 | $ 2,500. |
| August 26, 1985 | $ 2,500. |
| Total: | $17,500. |

On June 24, 1994, Debtor executed a Sallie Mae application/promissory note (the "Note") for a loan to consolidate [4] the Student Loans. On October 27, 1994, Debtor's application for the Consolidation Loan was approved, and $22,695.57 was applied to pay off the Student Loans.

On July 9, 1997, Debtor filed her chapter 7 bankruptcy petition. Debtor listed in her schedules debt owed to Sallie Mae in the amount of $25,240.88. On November 3, 1997, Debtor received her discharge.

After reopening her case, Debtor filed the Motion. The Motion contended in the alternative that (1) the Consolidation Loan is not a loan received for an educational benefit and is therefore not within the scope of § 523(a)(8) and (2) the Consolidation Loan is dischargeable under § 523(a)(8)(A) because repayment of the Student Loans commenced in January 1988, which makes the indebtedness over seven years old.[5]

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. The Higher Education Act of 1965 defines a guaranty agency as any state or private non-profit organization that has agreed with the Secretary of Education to administer a loan guaranty under the federal student loan program. See 20 U.S.C. § 1085(j).

3. The Higher Education Act provides for the federal student loan program and specifies

Sallie Mae as an eligible lender for federal consolidation loans. See 20 U.S.C. § 1078–3.

4. Consolidating student loans entails taking out a single new loan to repay in full existing student loans. See 20 U.S.C. § 1078–3 (describing loan consolidation program).

5. Upon Debtor filing the Motion, Sallie Mae submitted a claim to CSAC for payment on the Note. When CSAC paid the claim, it became the owner and holder of the Note. On June 22, 1998, CSAC executed a blanket letter of assignment to Educational Manage-

After a hearing on the Motion, I took the matter under submission.

## IV. DISCUSSION

 A party may bring a motion for judgment on the pleadings after the pleadings are closed, but within such time as not to delay the trial. *See* Fed.R.Civ.P. 12(c) (incorporated by Fed.R.Bankr.P. 7012). A judgment on the pleadings is proper when, taking all the allegations contained in the pleadings as true, the moving party is entitled to judgment as a matter of law. *See Nelson v. City of Irvine,* 143 F.3d 1196, 1200 (9th Cir.1998) (citation omitted).

The first issue is whether the Consolidation Loan is an educational loan for purposes of § 523(a)(8). The second issue is whether the seven-year period after which a loan would be dischargeable under § 523(a)(8)(A) runs from the date that repayment of the Consolidation Loan first became due or the date that repayment of the Student Loans first became due.

### A. *A Consolidation Loan Is an Educational Loan Under § 523(a)(8).*

Debtor contends in the Motion that the Consolidation Loan is not a loan received for an educational benefit. As support, she relies on two cases for the general proposition that a refinancing agreement changes the legal character of the loan. *See Matthews v. Transamerica Fin. Servs.,* 724 F.2d 798, 800 n. 3 (9th Cir. 1984); *Union Bank v. Wendland,* 126 Cal. Rptr. 549, 557, 54 Cal.App.3d 393, 405 (1976). Thus, she contends that the Consolidation Loan is not within the scope of § 523(a)(8). I disagree.

 Because Debtor filed her petition in 1997, the version of § 523 that was in effect at that time applies to the Complaint.[6]

ment Corporation ("ECMC"). ECMC then filed a motion to intervene as a defendant.

**6.** Effective October 7, 1998, 11 U.S.C. § 523(a)(8)(A) was repealed to eliminate the discharge of a student loan that first became

At the time Debtor filed her petition, § 523(a)(8)(A) provided that:

A discharge under § 727 ... does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition.

11 U.S.C. § 523(a)(8)(A) (1994).

First, the plain language of the statute supports the view that a consolidation loan is an educational loan within the scope of § 523(a)(8) because it is an obligation incurred to repay funds received as an educational benefit. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (stating that "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (citation and internal quotation marks omitted).

 Also, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 222, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (citations omitted). Section 523(a)(8) was enacted to

due more than seven years prior to filing of a bankruptcy petition. *See* Higher Education Amendments of 1998, Pub.L. No. 105–244, § 971, 112 Stat. 1581, 1837 (1998).

maintain the credibility and stability of the student loan program and to assure future generations of students a viable loan program. *See Cobb v. United Student Aid Funds, Inc. (In re Cobb)*, 196 B.R. 34, 37 (Bankr.E.D.Va.1996) (noting that Congress enacted § 523 to contribute to "the continued credibility and stability of the student loan program which would in turn ensure its viability").

■ Furthermore, strong policy reasons support the view that Congress intended § 523(a)(8) to apply to a consolidation loan. Generally, the Code seeks to provide a debtor with a fresh start after bankruptcy. *See Apte v. Japra (In re Apte)*, 96 F.3d 1319, 1322 (9th Cir.1996) (citing *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). However, for various public policy reasons that outweigh a debtor's need for a fresh start, Congress excepts from discharge certain obligations, including student loans under various government-sponsored educational programs. *See Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir.1992). Indeed, § 523(a)(8) specifically carries out this congressional policy by preventing debtors from discharging their student loans in bankruptcy. *See Santa Fe Med. Servs., Inc. v. Segal (In re Segal)*, 57 F.3d 342, 348 (3d Cir.1995).

It is also axiomatic that treating consolidation loans outside the scope of § 523(a)(8) will likely end the consolidation loan program or cause such loans to be unnecessarily expensive as lenders seek to offset the risk of a discharge in bankruptcy. This result would certainly run counter to Congress's intent to preserve educational funding from a bankruptcy discharge. *See* S.REP. No. 96–230 (1979), *reprinted in* 1979 U.S.C.C.A.N. 936.

Additionally, a consolidation loan is an integral part of the entire student loan program and should receive equal protection from discharge in bankruptcy. When Debtor consolidated the Student Loans, she did not change the underlying charac-

ter of the funding that she received. Here, by paying off the Student Loans with the Consolidation Loan, Sallie Mae, in accordance with the consolidated loan program, substituted its funds for the funds Debtor previously received for an educational purpose. These funds were restricted for that sole use. Debtor had no right to use these funds for other purposes. *See* 20 U.S.C. § 1078–3. Thus, the character of the Consolidation Loan remains strictly educational. In effect, the Student Loans have been replaced by the Consolidation Loan, which benefitted Debtor by making it easier for her to pay off her educational loans. This was all done to provide Debtor with an educational opportunity, while preserving these funding resources for others with similar needs.

Lastly, allowing borrowers to discharge their student loans by merely obtaining a consolidation loan contravenes the clear congressional mandate requiring repayment of student loans. *See Saburah v. United States Dep't of Educ. (In re Saburah)*, 136 B.R. 246, 251 (Bankr.C.D.Cal. 1992) (noting that without upholding the goals of § 523(a)(8), a student could simply obtain a consolidation loan and file for bankruptcy to have the debt discharged).

Other courts considering this issue have held that consolidation loans are within the scope of § 523(a)(8). In *Shaffer v. United Student Aid Funds, Inc.*, 237 B.R. 617 (Bankr.N.D.Tex.1999), the court concluded that a federally-insured consolidation loan made under 20 U.S.C. § 1078–3 is an educational loan within the scope of § 523(a)(8). *Id.* at 621. The court reached its decision based on the policy considerations behind the student loan program and § 523(a)(8) and the overwhelming majority of other courts holding that a consolidation loan is an educational loan within the meaning of § 523(a)(8). *Id.; see also Hiatt v. Indiana State Student Assistance Comm.*, 36 F.3d 21, 24 (7th Cir.1994) (noting that a consolidation loan is in fact a second guaranteed student

loan debt); *Powers v. Southwest Student Servs. Corp. (In re Powers)*, 235 B.R. 894, 897 (Bankr.W.D.Mo.1999) (finding that "[t]here is no dispute that the consolidation loan ... is an educational loan that falls within the coverage of [§ 523(a)(8)]."); *Martin v. Great Lakes Higher Educ. Corp.*, 137 B.R. 770, 772 (Bankr.W.D.Mo. 1992) (finding that a consolidation loan under the Higher Education Act is an educational loan for purposes of § 523(a)(8)); *United Student Aid Funds v. Flint (In re Flint)*, 238 B.R. 676, 681 (E.D.Mich.1999) (finding that the character of a consolidation loan was made and used for educational purposes) (hereinafter *"Flint II "*).

Interestingly, no case law directly supports Debtor's position. Debtor cites to *Flint v. United Student Aid Funds (In re Flint)*, 231 B.R. 611 (Bankr.E.D.Mich. 1999), but the holding in this case was reversed on appeal in *Flint II*. In *Flint II*, the district court held that a loan taken by the debtor to pay off her preexisting student loans was an educational loan that was not dischargeable under § 523(a)(8). *See Flint II*, 238 B.R. at 681.

Debtor also cites two cases for the general proposition that a refinancing agreement changes the legal character of a loan. *See Matthews*, 724 F.2d at 800 n. 3; *Union Bank*, 126 Cal.Rptr. at 557, 54 Cal.App.3d 393 at 405. In *Matthews*, the Ninth Circuit held that the original purchase-money character of a security interest in household goods was destroyed by a subsequent refinancing of that agreement. Therefore, it held that the debtor could avoid the lien pursuant to § 522(f). This case, however, deals with an entirely different section of the Code. Additionally, the previously discussed public policy reasons for holding student and consolidation loans nondischargeable do not apply in the § 522(f) context.

In *Union Bank*, the California court of appeals discussed a California statute that accords a purchase-money home loan protection under the anti-deficiency statute unless the homeowner has refinanced that

loan. Again, this case is distinguishable from the student loan situation and the policy reasons behind § 523(a)(8).

■ Therefore, based on (1) a clear reading of the statutory language, (2) the legislative history, (3) policy considerations, and (4) the overwhelming case authority, I hold that as a matter of law, the Consolidation Loan is an educational loan for purposes of § 523(a)(8). Therefore, the Consolidation Loan is nondischargeable under § 523(a)(8)(A) unless the seven-year period has expired.

B. *The Seven–Year Period Set Forth in § 523(a)(8)(A) Is Measured from the Date the Consolidation Loan First Became Due.*

Debtor alleges in the Motion that the Consolidation Loan is dischargeable because the Student Loans first became due in January 1988, more than seven years before Debtor filed her bankruptcy petition. The version of § 523(a)(8)(A) in effect when Debtor filed her petition provided that a student loan was nondischargeable unless "such loan first became due more than seven years ... before the date of the filing of the petition." 11 U.S.C. § 523(a)(8)(A) (1994).

Relying on the plain language of § 523(a)(8)(A), the Seventh Circuit held that the nondischargeability period commences on the date the consolidation loan first became due. *See Hiatt*, 36 F.3d at 25. In reaching its decision, the court reasoned that because proceeds from a consolidation loan satisfy a borrower's existing student loans, the new and distinct consolidation loan is the loan Congress intended to be within the scope of § 523(a)(8)(A). *Id.* at 23.

■ In determining whether the seven-year period begins to run on the date the original loans came due or the date the consolidated loan first became due, it is clear from a plain reading of § 523(a)(8)(A) that Congress meant "such loan" to be the loan that a debtor seeks to have dis-

charged. *See* 11 U.S.C. § 523(a)(8)(A). Here, it is the Consolidation Loan that Debtor seeks to have discharged.

Further, the overwhelming majority of courts addressing this issue have found that the time period under which a student loan is not dischargeable begins anew on the date that repayment of the consolidation loan first became due. *See Rudnicki v. Southern College of Optometry (In re Rudnicki)*, 228 B.R. 179, 181 (6th Cir. BAP 1999) (finding that the relevant date for purposes of determining dischargeability is the date when the consolidated loan first became due); *Mattingly v. New Jersey Higher Educ. Assistance Auth. (In re Mattingly)*, 226 B.R. 583, 585 (Bankr. W.D.Ky.1998) (holding that the plain language of § 523(a)(8)(A) requires that the relevant date for purposes of determining dischargeability is the date when the consolidated loan first became due) (citations omitted); *Meeker v. Educational Credit Management Corp. (In re Meeker)*, 225 B.R. 910, 912 (Bankr.N.D.Ohio 1998) (collecting cases that hold a consolidation loan resets the seven-year clock); *In re Saburah*, 136 B.R. at 253 (concluding as a matter of law that the seven-year period under § 523(a)(8)(A) begins on the date the consolidated loan first became due).

On July 9, 1997, Debtor filed her bankruptcy petition. Although it is unclear when the Consolidation Loan first became due, in order to be dischargeable, repayment of the Consolidation Loan would have had to commence on or before July 8, 1990. Because Debtor did not even execute the Note until June 24, 1994, the seven-year requirement clearly has not been satisfied.

Therefore, because the repayment period for the Consolidation Loan is calculated from the date the Consolidation Loan first became due, the seven-year requirement set forth in § 523(a)(8)(A) has not been satisfied, and the Consolidation Loan is nondischargeable under § 523(a)(8)(A).

## V. CONCLUSION

Based on the plain language of § 523(a)(8), the legislative history, public policy considerations, and the prevalent case law, the Consolidation Loan is an educational loan within the scope of § 523(a)(8). Also, based on the plain language of § 523(a)(8)(A) and the outstanding case law, the seven-year period commenced from the date that repayment of the Consolidated Loan first became due. Because seven years have not lapsed since the Consolidation Loan first became due, the Consolidation Loan is nondischargeable under § 523(a)(8)(A).

This opinion shall constitute my findings of fact and conclusions of law.