272 B.R. 857 (2001)
In the Matter of Karl and Mary Ellen HARRISON, Debtors.
Karl and Mary Ellen Harrison, Plaintiffs,
v.
Texas Guaranteed Student Loan Corporation, Defendant.
Bankruptcy No. 98-17647/JHW. Adversary No. 00-1187.
United States Bankruptcy Court, D. New Jersey.
May 30, 2001.
*858 Morton Feldman, Atlantic City, NJ, for Debtors.
Susan N. Ferschmann, Deiches & Ferschmann, Haddonfield, NJ, for TGSLC.
OPINION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT AND DEBTORS' APPLICATION TO FILE ANSWER OUT OF TIME
JUDITH H. WIZMUR, Bankruptcy Judge.
In this action, on competing motions for summary judgment, debtors, Karl and Mary Ellen Harrison, ask that Karl Harrison's consolidated student loans be discharged under a previous version of 11 U.S.C. § 523(a)(8)(A). Debtors argue that the seven year "look back" period beyond which a debt may be discharged begins from the due date of the original loans. Alternatively, debtors allege that there have been multiple consolidations of the loans in question, in contravention of federal law. As a result, only the first of the consolidated loans is valid, and since that loan falls outside the seven year period, it is dischargeable. The defendant, the Texas Guaranteed Student Loan Corporation *859 ("TGSLC"), contends that there was only one formal consolidation, that the look back period begins with the consolidated loan, and that debtors' student loan obligation is nondischargeable. TGSLC also asks that debtors' complaint be dismissed and default judgment entered against the debtors for their failure to make discovery and to timely file an answer to TGSLC's counterclaim. This matter was originally scheduled to be heard in court on February 5, 2001. At the request of the parties, the decision on the summary judgment motions is being rendered on the papers.

PROCEDURAL HISTORY
Karl and Mary Ellen Harrison filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code on August 14, 1998. The debtors were granted a discharge on November 30, 1998 and their case was closed on December 2, 1998. The debtors' case was reopened at debtors' request on March 9, 2000 to address the dischargeability of Karl Harrison's student loans. Debtors' motion for a declaratory judgment was denied on June 2, 2000 without prejudice to the debtors' opportunity to file an adversary proceeding, to be filed no later than June 21, 2000. Debtors commenced this adversary proceeding against TGSLC on June 23, 2000, asking simultaneously for summary judgment. TGSLC's answer and counterclaim were timely filed on September 18, 2000.
On October 6, 2000, debtors amended their complaint to add 14 additional counts, asserting that various procedural deficiencies, including the contention that there was more than one consolidation, violated provisions of 20 U.S.C. § 1078-3. On January 12, 2001, TGSLC cross moved for summary judgment, and moved for dismissal of the debtors' complaint for failure to make discovery and/or for the entry of default and default judgment for failure to answer the counterclaim.
Debtors responded on January 22, 2001 with a motion to file their answer to TGSLC's counterclaim out of time.

FACTS
The underlying cause of action in this case concerns the dischargeability of certain prepetition student loans taken out by debtor Karl Harrison. Mr. Harrison attended the Southwest School of Electronics in Austin, Texas, graduating on February 1, 1989. While he was enrolled as a student, Mr. Harrison obtained, as is relevant here, four loans to assist in paying his school tuition. The four loans, made to the debtor and guaranteed by TGSLC, were as follows:

 ORIGINAL
 PRINCIPAL
LOAN DATE AMOUNT
Loan No. G01 10/13/87 $2,625
Loan No. S02 10/13/87 $1,000
Loan No. S04 10/28/88 $1,500
Loan No. G03 10/04/88 $2,100

The promissory notes evidencing the loans were each endorsed to TGSLC for collection.
TGSLC is a private, non-profit guarantee agency under the Federal Family Educational Loan Program. See 20 U.S.C. §§ 1071 through 1087. As a guarantee agency, TGSLC reimburses lenders directly and is subsequently reimbursed for those payments by the Department of Education. TGSLC is then required to pursue collection of the defaulted loans on behalf of the federal government and receives a percentage of the funds recovered. 34 C.F.R. § 682-100, et seq.
The parties do not dispute that on November 10, 1996, Karl Harrison obtained a consolidated loan, consolidating the four *860 loans into one new loan, with a new loan balance of $6,576.29 through the Bank of America, N.A. The promissory note evidencing this loan was endorsed over to TGSLC on October 28, 1999 for collection.
The primary factual dispute between the parties is whether the four original loans taken out by the debtor in 1987 and 1988, were consolidated prior to November 10, 1996. If so, the debtor contends that the November 10, 1996 consolidation would be invalid under 20 U.S.C. § 1078-3. The debtor characterizes as many as six (6) documents as consolidations of Karl Harrison's student loan debt, including documents dated January 9, 1989, January 31, 1989, and April 12, 1989, as well as various recapitalizations which the debtor contends equate with consolidations. TGSLC denies that there was any consolidation until the consolidation loan on November 10, 1996.
I have reviewed the certifications and documents submitted by both parties closely, and am able to conclude that the only consolidation loan effected here was the loan dated November 10, 1996.
The first and second purported consolidations (January 9, 1989 and January 31, 1989) are clearly mischaracterized by the debtors. The January 9, 1989 and January 31, 1989 forms simply reflect the amounts borrowed by the debtor, and how the debtor's four original loans and his Pell grant were used to satisfy his tuition costs. There is no indication on these forms that a consolidation was sought, effected or utilized in any manner to satisfy the debtors' four original loans. Nowhere on these forms does the word "consolidation" appear, nor is there any computational support on the forms themselves to constitute a consolidation.
The third alleged consolidation, dated April 12, 1989, is in fact captioned as a "Consolidation Application and Promissory Note". The intended consolidated lender was Citibank (New York State). The debtor completed his portion of the application for the consolidation loan, and the form was apparently sent to Citibank. The bottom portion of the application, though mostly illegible, appears not to have been completed by Citibank.[1] A verification request was made by Citibank in connection with the proposed consolidation. However, there is no evidence that a consolidated loan was ever actually made or executed by Citibank or that monies were transferred to satisfy the debtors' four original loans.
In fact, the evidence submitted supports the conclusion that no consolidation of debtors' student loans was actually accomplished in April 1989. On repayment schedules and past-due notices sent to the debtor by the loan servicing agent from 1990 to 1993, each of the debtor's loans is separately noted, as is the current balance of each loan, which fluctuates with payments made and interest accruing. Although the loans were serviced together and required the debtor to make a single monthly payment, that single payment was apportioned among the loans. These arrangements and notations are wholly inconsistent with the debtors' proposal that the loans were consolidated in April 1989.
The supplemental submissions presented by TGSLC provide further support for the conclusion that the debtors' four loans were not consolidated into one new loan in April 1989. The payment histories of each of the loans do not indicate that any consolidation loan was ever made by Citibank. In fact, the payment histories reflect that *861 TGSLC, as guarantor of the original loans, paid Loan No. G01 and No. S04 on February 4, 1994, and Loan No. G03 on August 7, 1991. The loans were not consolidated into one loan until November 10, 1996.
The debtor's claim that the occasional entries in the loan payment histories reflecting a "recapitalization" of the interest due into principal somehow qualify as "consolidations" is equally unavailing. A "consolidation loan" is defined as "[a] borrowing in which the proceeds of the loan are used to pay off other individual loans and create a more manageable debt." BLACK'S LAW DICTIONARY at 937 (6th Ed.1990). The capitalizations did not involve any new borrowing which satisfied the previous loans. In fact, at least one form showing a capitalization of interest, dated July 22, 1991, displays the amount of interest capitalized for each of three loans, reflecting that each of the loans continued to be administered separately and that the loans were not consolidated.
A motion for summary judgment is not normally a vehicle for resolving factual disputes. However, where the moving party demonstrates, by competent evidence, that there is an absence of a genuine issue of a material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), "the non-moving party must designate `specific facts showing there is a genuine issue for trial.'" Id. See also Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir.1996) (nonmovant must provide more than mere allegations). The evidence offered must be of sufficient quantum and quality to allow a rational and fair minded fact finder to return a verdict in favor of the nonmovant, bearing in mind the applicable standard of proof that would apply at a trial on the merits. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).
Here, TGSLC has certified that their records do not reflect the consolidation of the debtor's student loans prior to November 20, 1996. All of the documents submitted by both parties are consistent with the proposition that no such consolidations occurred. The debtors' reliance on the incomplete application for loan consolidation submitted to Citicorp, the request for verification from Citicorp, and the fact that the debtor was generally required to make a single monthly payment on all the loans, are insufficient, both in quantity and quality, to designate the question of previous consolidations as a "genuine" issue of material fact. Accordingly, I find as a fact on this record that the debtors' student loans were consolidated on November 10, 1996, and that there were no previous consolidations of the loans.

DISCUSSION
Both parties seek the entry of summary judgment on the papers. Summary judgment is appropriate where the moving party is entitled to judgment, as a matter of law, and where there exists no genuine dispute as to any material fact. Bankruptcy Rule 7056 makes Fed.R.Civ.P. 56 applicable to adversary proceedings. Rule 56(c) provides, in pertinent part that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See, e.g., Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir.1996); Gottshall v. Consolidated Rail Corp., 56 F.3d 530, 533 (3d Cir.1995).
*862 We have determined that there are no genuine issues of material fact presented here. We must decide whether either party is entitled to judgment as a matter of law.
I. The Seven Year "Look Back" Period.
Prior to the October 7, 1998 amendment to 11 U.S.C. § 523(a)(8)(A), educational loans were dischargeable if the repayment obligation first arose more than seven years before the date of the filing of the petition. The so-called "look-back" period was deleted in 1998. HIGHER EDUCATION AMENDMENTS OF 1998, PUB.L. 105-244, 112 Stat. 1581, § 971 (Oct. 7, 1998). Because the debtors' petition was filed on August 14, 1998, before the effective date of the amendment, we must apply the pre-amendment version of § 523(a)(8)(A), which provided as follows:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt 
. . .
(8) for an educational benefit overpayment of loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless 
(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition.
TGSLC contends that the debt consolidation in November 1996 restarted the seven year start date for purposes of § 523(a)(8)(A). Debtors urge the court to follow In re McKinney, 120 B.R. 416 (Bankr.N.D.Ohio 1990), which held that the seven-year period begins on the original due date for the loan. The McKinney court struggled to balance the purpose of § 523(a)(8), "to provide equal treatment for student loans in the context of bankruptcy nondischargeability proceedings", with that of 20 U.S.C. § 1078-3, "to protect lenders from losing their best accounts to outside consolidation lenders and further to avoid forcing students into default with high monthly payments", concluding that the statutes could not be read in pari materia and that "the consolidation of a student loan . . . does not change the date the loan first became due for determining the dischargeability of said loan under 11 U.S.C. § 523(a)(8)(A)." Id. at 420-21.
On appeal, the Ohio district court disagreed and reversed the bankruptcy court decision. In re McKinney, No. 1:90CV1946, 1992 WL 265992 (N.D.Ohio 1992). The district court found that there was "strong public policy in favor of the repayment of the student loans," that the statutes did not conflict and that a consolidation loan constitutes a new loan for purposes of § 523(a)(8). Id. at *2-3.
The majority of courts which have reviewed the issue have concluded that the date the consolidation loan first becomes due is the date which triggers the running of the time period under § 523(a)(8)(A). See, e.g., In re Drysdale, 248 B.R. 386 (9th Cir. BAP 2000), aff'd, 2 Fed.Appx. 776, 2001 WL 68318 (9th Cir.2001); In re Rudnicki, 228 B.R. 179 (6th Cir. BAP 1999); Sheer v. Educational Credit Mgmt. Corp., 245 B.R. 236 (D.Md.1999), aff'd, 229 F.3d 1143 (4th Cir.2000); In re Flint, 238 B.R. 676 (E.D.Mich.1999); In re Mattingly, 226 B.R. 583 (Bankr.W.D.Ky.1998); In re Meeker, 225 B.R. 910 (Bankr.N.D.Ohio 1998); In re Stricklen, 224 B.R. 905 (Bankr.E.D.Ark.1998).
*863 The reasoning is set out by the Seventh Circuit in Hiatt v. Indiana Student Assist. Comm'n, 36 F.3d 21 (7th Cir.1994).[2] In Hiatt, the debtor voluntarily consolidated her student loans and later sought to have those loans discharged under § 523(a)(8)(A). The debtor argued that "her debt was dischargeable because she had filed her bankruptcy after the nondischargeability period for the original loans had expired, even though she had consolidated her loans within the nondischargeability period." Id. at 22. The court disagreed, concluding that "in cases in which a debtor has consolidated her educational loans . . . the nondischargeability period commences on the date on which the consolidation loan first became due". Id. at 24. The court explained:
Although the district court's interpretation might, as argued by Hiatt, serve to extend the total nondischargeability period significantly in some cases by effectively restarting it at the time the subsequent consolidation loan first becomes due, such extension of the nondischargeability period does not render that interpretation "demonstrably at odds with" Congress' intent to curtail abuse and to promote the viability of the federal student loan program. Rather, the district court's interpretation furthers the congressional policy by ensuring that a consolidation loan, which is in fact a second government guaranteed student loan debt, is collectible for at least five years before it is dischargeable.
Id.
Congress' intent was to reduce defaults and to ensure a good faith effort towards repayment. If "§ 523(a)(8) [were] not interpreted to uphold these goals, `a student could obtain a loan, avoid repayment while in school, wait until the first payment became due, obtain forbearances, at some point consolidate and drastically reduce the monthly payment, obtain forbearances on the consolidation loan, then once the § 523(a)(8)(A) period ended, file a bankruptcy petition.'" In re Flint, 238 B.R. 676, 680 (E.D.Mich.1999) (quoting In re Saburah, 136 B.R. 246, 251 (Bankr.C.D.Cal.1992)). Clearly this was not Congress' intent.
I agree with the majority of courts that the nondischargeability period commences on the date on which the consolidation loan first becomes due. I conclude that a consolidated loan, which, as here, is actually a second government guaranteed student loan debt, is collectible, under the pre-1998 amendment to § 523(a)(8), for at least seven (7) years before it is dischargeable.
In this case, the November 1996 consolidated loan marked the commencement of the seven year period after which the loan would be eligible for discharge. Because the debtors' petition was filed in 1998, the 1996 student loan consolidation must be designated as a nondischargeable debtor under 11 U.S.C. § 523(a)(8). Summary judgment is granted in favor of TGSLC, and counts one and two of the debtors' amended complaint, seeking a declaration that the debtor's student loans are discharged, will be dismissed.
*864 II. Remaining Counts of Amended Complaint.
In count three of their amended complaint, the debtors raise an equitable estoppel argument, asserting that TGSLC or its predecessors have already sought and/or have received payment for these loans and are not entitled to recover additional payment from the debtor. The debtor misapprehends the process. As noted above, TGSLC, as guarantor of the consolidated loan made by Bank of America on November 10, 1996, paid the bank after the debtor's default, and received the endorsement of the promissory note from the bank. In turn, under the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 through 1087, TGSLC recovered the amounts paid from the Department of Education, and is now required to pursue collection of the amounts due from the debtor on behalf of the federal government. There is no double collection or "windfall". Count three of the debtor's amended complaint will be dismissed.
With respect to counts four, five[3], six, seven, eight and nine of the amended complaint, the debtor offers challenges to consolidation loans ostensibly entered into in 1987 and 1989, and the invalidity of second consolidation loans. I have found as a fact that only one consolidation loan was entered into by the debtor, in November 1996. There is no basis for relief to the debtor asserted in these counts, and the counts will be dismissed.
In counts ten through thirteen and sixteen of the debtor's amended complaint, the debtor challenges various ways that he contends either TGSLC or the Bank of America did not comply with provisions of 20 U.S.C. § 1078-3, including the eligibility of the Bank of America as a lender, whether the loan was made without security and without endorsement, whether the debtor requested the consolidation loan and whether the debtor was an eligible borrower. The import of § 1078-3 is to govern the insurability of student loans made by lenders, either directly by the Department of Education, or through a guarantee agency such as the TGSLC. If the statutory requirements prescribed in § 1078-3 are violated by the lender, reimbursement or guarantee of the loan may be denied to the lender.
In this case, the fact that TGSLC paid the Bank of America for the promissory note, and was subsequently reimbursed by the Department of Education on the loan, signifies that both the guarantee agency and the Department of Education believed, and acted upon that belief, that the consolidation loan in question was insurable, that the lender, Bank of America, had met all requirements, and that the lender could achieve the insurance coverage provided for in § 1078-3. The debtor's challenge to his obligation on the consolidated student loan on the basis of alleged failures by the lender to comply with statutory requirements governing insurability is not sustainable as a matter of law.
In count fourteen, the debtor argues that "the abstention doctrine" should be exercised in a "creaming-type case". Debtor's reference is unclear. Principles of abstention, as detailed in 28 U.S.C. § 1334, do not apply to a resolution of a *865 dischargeability question under the Bankruptcy Code. Count fourteen is dismissed.
Count fifteen provides no basis for relief, and shall be dismissed.
We do not address the debtor's claim in his most recent certification, which was not pled in his amended complaint, that his student loans now constitute an undue hardship, which would warrant a finding of nondischargeability under 11 U.S.C. § 523(a)(8). Nor do we need to address TGSLC's motion to dismiss on the basis of the debtor's failure to provide discovery. The debtor's quest to file an answer to the counterclaim out of time may be granted, but does not change the result. Counsel for TGSLC shall prepare an order in conformance with the above opinion.
NOTES
[1] In contrast, the November 10, 1996 application, which was approved by the Bank of America, clearly reflects the consolidation arrangements approved by the lender.
[2] While the Third Circuit has not yet ruled on this question, it did remark in dicta in In re Segal, 57 F.3d 342 (3d Cir.1995) in a footnote that:

This case does not involve loan consolidations, which courts routinely have viewed as `educational loans,' within the meaning of 11 U.S.C. § 523(a)(8). . . . Several courts have determined that consolidation loans meet the § 523(a)(8) definition and that the date of the consolidation loan starts the running of the seven-year limit of § 523(a)(8)(A).
Id. at 349 n. 8 (citing to Hiatt).
[3] In count 5, the debtor includes a challenge to the liability of Mary Ellen Harrison on the consolidated note, since she was not a signatory to the note. To the extent that Mrs. Harrison did not sign as a guarantor on the note and did not obligate herself on the note, the debtor is correct that there appears to be no legal basis to charge her with liability for this obligation.