In re Timothy FELSKI, Debtor.

State of Michigan Assigned Claims
Facility, Appellant,

v.

Timothy Felski, Appellee.

No. 01–CV–10272–BC.

United States District Court,
E.D. Michigan,
Northern Division.

May 13, 2002.

Timothy Felski, Prudenville, MI, pro se.

Martin B. Wilson, Lefevre, Swartz, Saginaw, MI, for Debtor.

Stuart A. Gold, Gold & Lange, Southfield, MI, for Appellant.

## OPINION AND ORDER REVERSING JUDGMENT OF BANKRUPTCY COURT

LAWSON, District Judge.

The question presented in this appeal is whether a debtor who drives while intoxicated and is involved in a motor vehicle accident causing personal injury may discharge a debt to an insurer assigned to pay Personal Injury Protection (PIP) benefits to the injured third party under Michigan's no-fault insurance act because of the debtor-driver's uninsured status. The Bankruptcy Court concluded that 11 U.S.C. § 523(a)(9) did not prevent discharge of the debt because the debt arose not from "personal injury," but rather from a state statutory subrogation scheme. Because this Court determines that the PIP benefits paid, and for which the creditor seeks to be made whole, resulted directly from injuries received in the accident, the Court finds that lower court erred and will reverse the lower court's judgment.

### I.

Timothy Felski's pickup truck collided with a motorcycle on June 30, 1993 in Barry County, Michigan. The motorcycle driver, Rowen, was injured. Felski's blood alcohol level at the time of the accident exceeded the maximum permitted under Michigan law.

Under Michigan's no-fault insurance law, Mich. Comp. Laws §§ 500.3101, *et seq.*, third-party tort liability for certain kinds and amounts of economic damages arising from a motor vehicle accident has been abolished. *See* Mich. Comp. Laws § 500.3135(3). These economic damages include wage loss below the statutory limit, medical costs, and other allowable expenses, collectively known as Personal Injury Protection, or "PIP," benefits. *See* Mich. Comp. Laws §§ 500.3107–.3110. To recover PIP benefits, owners of motor vehicles must carry their own insurance, and seek recovery of those damages from their own insurance carrier, who pays without regard to fault. *See* Mich. Comp. Laws §§ 500.3101, .3105. There is an exception to this general scheme in the case of those injured in a motor vehicle accident while operating or riding a motorcycle. Those injured parties seek recovery of PIP benefits from the insurer of the owner, and

then the operator, of the motor vehicle involved in the accident. *See* Mich. Comp. Laws § 500.3114(5). In this case, Rowen therefore was to look to Felski's insurer to recover his PIP benefits incurred as a result of injuries he received in the accident. However, at the time, Felski did not have insurance as required by Mich. Comp. Laws § 500.3101(1).

When no insurance is available to a potential PIP claimant, Michigan law allows an injured person to make a claim through an assigned claims plan in which the claim is placed with a participating insurance company. *See* Mich. Comp. Laws § 500.3172(1). (All insurers writing automobile coverage in Michigan are obliged to participate. *See* Mich. Comp. Laws § 500.3171.) Rowen's claim in this case was placed with the Auto Club Insurance Association. The assigned insurer who pays the PIP claim as a result of the responsible motor vehicle owner's failure to obtain insurance is entitled to seek reimbursement for those payments from the vehicle owner. *See* Mich. Comp. Laws § 500.3177(1). Accordingly, Auto Club Insurance Association sued Felski in the state circuit court to recover the $144,219.01 it paid to Rowen. Auto Club obtained a default judgment for the amount. It then assigned its rights under the judgment to Michigan Assigned Claims Facility. *See* Mich. Comp. Laws § 500.3175(2).

Felski subsequently filed for bankruptcy. The Assigned Claims Facility filed a complaint for nondischargeability with the bankruptcy court on December 6, 2000. Felski answered on January 3, 2001, and thereafter the parties filed cross motions for summary judgment. The bankruptcy court, in a July 5, 2001 opinion, denied the Assigned Claims Facility's motion and granted Felski's motion, thereby allowing the discharge of that debt. The Bankruptcy Court observed that debts arising from "personal injury caused by the debtor's operation of a motor vehicle [while intoxicated]" are not dischargeable under 11 U.S.C. § 523(a)(9). However, the lower court held that the debt to the Assigned Claims Facility arose from Michigan's no-fault insurance law which creates a statutory right of reimbursement that is not dependent upon the injured party's ability to establish a right to recover from the debtor. The lower court concluded, therefore, that the debt did not result from a "personal injury," and therefore fell outside the scope of § 523(a)(9).

The Assigned Claims Facility filed the instant appeal on July 13, 2001. The debtor responded to the appeal *pro se.* After several postponements of oral argument at the parties' requests, the Court heard from the parties on April 18, 2002.

## II.

In bankruptcy proceedings, the bankruptcy judge is the finder of fact. *In re Isaacman,* 26 F.3d 629, 631 (6th Cir. 1994). Those findings will not be disturbed unless they are clearly erroneous and the appellant can demonstrate "the most cogent evidence of [a] mistake of justice." *In re Baker & Getty Fin. Servs.,* 106 F.3d 1255, 1259 (6th Cir.1997). Conclusions of law, however, are reviewed de novo. *In re Zaptocky,* 250 F.3d 1020, 1023 (6th Cir.2001).

### A.

Title 11 U.S.C. § 523(a) provides that an individual debtor may not discharge any debt

for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

11 U.S.C. § 523(a)(9). The purpose of this section is "to protect the victims of debtors who have unlawfully driven while intoxicated." *In re Dunn*, 203 B.R. 414, 417 (E.D.Mich.1996). Therefore, to prevail on a complaint alleging nondischargeability, the creditor must establish that the debt resulted from (1) a death or personal injury, (2) caused by the operation of a motor vehicle by the debtor, and (3) the unlawfulness of the operation because the debtor was intoxicated from using alcohol, a drug, or another substance. A creditor may use the prior state court record to determine whether the debt is nondischargeable under § 523(a)(9). *Matter of Pahule*, 849 F.2d 1056 (7th Cir.1988). However, if the state court record is insufficient, the creditor may present additional evidence to the bankruptcy court. *Allstate Ins. Co. v. Humphrey*, 102 B.R. 629 (Bankr.S.D.Ohio 1989).

■ The debtor argued in the lower court that § 523(a)(9) required demonstration of a causal connection between the debtor's intoxication and the personal injury, and that, despite his drunkenness, the facts would show that it was the motorcyclist, not him, who was at fault in the accident. The lower court did not reach this issue because of its determination that the debt was not "for death or personal injury."[1] This Court will consider the "personal injury" element of the nondischargeability claim now.

As the bankruptcy court states in its opinion, the state court complaint is not a part of the record. Therefore, an analysis of Michigan's no-fault insurance law is necessary to determine the nature of appellant's claim. Under Michigan's no-fault law, certain tort liability for various forms of damage arising from automobile accidents is abolished, including property damage (except for "mini-tort" liability up to $500 of uninsured damage), and economic loss, consisting of medical expenses, wages for three years up to the statutory cap, and replacement services up to $20 per day. *See* Mich. Comp. Laws § 500.3135(1) & (3); 500.3105(2). Actions for non-economic loss may be maintained for death, serious permanent disfigurement and serious impairment of a body function. *Id.*

Michigan has created an obligation upon drivers and motor vehicle owners to carry no-fault insurance when they operate a motor vehicle, and there are both criminal and civil penalties for the failure to do so. For instance, it is a misdemeanor to drive an uninsured vehicle. Mich. Comp. L. § 500.3102(2).

With respect to civil penalties, an uninsured driver cannot recover any damages from another driver who is at fault in an accident, *see* Mich. Comp. L. § 500.3135(2)(c), and an uninsured driver loses the benefit of the abolition of certain tort liability created by Mich. Comp. Laws § 500.3135(3). Thus, if a person is injured by an uninsured driver, he may recover a full range of tort damages if he can prove that the uninsured driver was at fault in causing the accident. *Bradley v. Mid–Century Ins. Co.*, 409 Mich. 1, 62, 294 N.W.2d 141, 163 (1980); *Ross v. Glaser*, 220 Mich.App. 183, 192, 559 N.W.2d 331, 337 (1997) (tort liability requires that the tortuous conduct be a proximate cause of the injury).

No-fault insurance carriers are liable to their own insured drivers for PIP damages, as defined by statute, regardless of fault. *See* Mich. Comp. Laws § 500.3105(2). However, in certain cases,

---

1. Appellant argues here that it was blindsided by the bankruptcy court's treatment of that issue, and that its due process rights were violated because, since the issue was never raised by the debtor, it did not have an opportunity to address that issue in the lower court.

no-fault carriers must pay PIP benefits to injured parties other than their own insureds. For instance, carriers insuring certain common carriers must pay PIP benefits to passengers regardless of whether those passengers carry their own no-fault policy. *See* Mich. Comp Laws § 500.3114(2). Likewise, in the case of accidents involving injured motorcyclists, the statute establishes an order of priority for payment of benefits, beginning with the insurer of the motor vehicle involved in the accident. *See* Mich. Comp. Laws § 500.3114(5). This payment must be made regardless of fault. *See* Mich. Comp. Laws § 500.3105(2). If there is no insurance available from the motor vehicle owner or operator, the injured motorcycle operator turns to his own no-fault carrier if he has coverage on a motor vehicle, and then to the motorcycle owner's carrier if that person has coverage on a motor vehicle. Once again, this PIP coverage is available regardless of fault and irrespective of whether the covered motor vehicle was involved in the accident. *Ibid.*

When there is no coverage because the operator of the motor vehicle (not the motorcycle) is uninsured, there is a mechanism for the injured motorcyclist to obtain PIP benefits: the assigned claims plan will provide PIP benefits "if no personal protection insurance is applicable to the injury." Mich. Comp. Laws § 500.3172(1). In such a case, the Michigan Assigned Claims Facility assigns the claim to an insurer doing business in this state according to statutorily authorized rules. *See* Mich. Comp. Laws § 500.3174, 500.3175(1). Thereafter, the insurer may seek reimbursement of the PIP benefits paid from the owner of the uninsured vehicle involved in the accident. *See* Mich. Comp. Laws § 500.3177(1).

Recovery from an uninsured motor vehicle owner under Mich. Comp. Laws § 500.3177(1) may be had regardless of fault. It is one of the civil penalties included against those who drive uninsured vehicles. But it is not the only penalty, and the uninsured driver's exposure to liability is much more vast. A person injured by an uninsured driver may recover all his economic loss from the uninsured driver if fault is established. *Bradley v. Mid–Century Ins. Co., supra; Ross v. Glaser, supra.* If some of that economic loss includes PIP benefits paid by the injured person's no-fault insurer, then the insurer may be reimbursed. But this reimbursement will not occur in the absence of fault. Mich. Comp. L. § 500.3116(2). In other words, the PIP carrier may be subrogated to the rights of the person injured by an uninsured driver and, standing in the injured person's shoes, recover from the uninsured driver if fault is proven.

The insurer who pays PIP benefits through the assigned claims plan, however, need not prove fault to recover PIP benefits from the uninsured driver. That insurer has a statutory right to recover regardless of fault. *See* Mich. Comp. Laws § 500.3177(1). When the Assigned Claims Fund reimburses the insurer assigned the risk, another level of subrogation takes place. The assigned claims fund is subrogated to the rights of the assigned insurer, not the injured person. The Fund succeeds to the statutory right to recover only, nothing more. That is, it succeeds to a right of indemnification.

The bankruptcy court, in a well-reasoned opinion, concluded that the challenged debt arose from the operation of a motor vehicle by an uninsured driver, not a drunk driver. The genesis of the debt was one of the civil penalties imposed upon one who operates an uninsured vehicle. Accordingly, the bankruptcy court concluded that the plaintiff's default judgment in

state court was not based on personal injury because it did not derive from any physical or emotional injury perpetrated upon plaintiff's "subrogor"—i.e., the Auto Club—by the debtor. Hence, the holding that this was not a "debt ... for ... personal injury caused by the operation of a motor vehicle ...." 11 U.S.C. § 523(a)(9).

This holding, however, ignores the origin of the claim: economic loss arising from personal injuries incurred in a collision between a motorcycle and a motor vehicle. Although there are various statutory mechanisms which link the responsibility for payment of this claim back to the uninsured driver, the statutory scheme does not change the essential character of the debt as one arising from personal injury. In fact, PIP benefits are not payable unless they arise from personal injury. (PIP benefits consists of "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for *an injured person*'s care, recovery or rehabilitation, ... [w]ork loss consisting of loss of income from work *an injured person* would have performed, ... [and] expenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she *had not been injured, an injured per-*

*son* would have performed...." Mich. Comp. L. § 500.3107(1) (emphasis added).)

■ An assigned claims insurer acquires all the rights and claims of the injured party to whom it pays PIP benefits. *Auto–Owners Ins. Co. v. Michigan Mut. Ins. Co.*, 223 Mich.App. 205, 211, 565 N.W.2d 907, 910 (1997). In *Auto–Owners*, an automobile insurer paid no-fault benefits pursuant to assignment from the Assigned Claims Facility. Auto–Owners brought suit against the vehicle owners and driver, an independent insurance agent, and automobile insurer to recover reimbursement under a third-party beneficiary theory and negligence theory, alleging the defendants are the parties that should have paid the claimants. The Court, after quoting the language of Mich. Comp. L. § 500.3175(2),[2] held that "[b]ecause the claimants became plaintiff's insured by operation of the assigned-claims statute, plaintiff acquired all the rights and claims of its insured under the doctrine of equitable subrogation." *Auto–Owners*, 223 Mich.App. at 211, 565 N.W.2d at 910.

The bankruptcy court analyzed Mich. Comp. Laws § 500.3177(1)[3] in an attempt to determine whether it was a subrogation or indemnification statute. The Michigan Supreme Court has referred to this section as a "subrogation provision," *Belcher v.*

---

**2.** Mich. Comp. L. § 500.3175 states:

The insurer to whom claims have been assigned shall preserve and enforce rights to indemnity or reimbursement against third parties and account to the assigned claims facility therefor and shall assign such rights to the assigned claims facility upon reimbursement by the assigned claims facility.

**3.** Mich. Comp. Laws § 500.3177(1) states:

An insurer obligated to pay personal protection insurance benefits for accidental bodily injury to a person arising out of the ownership, maintenance, or use of an uninsured motor vehicle as a motor vehicle may re-

cover such benefits paid and appropriate loss adjustment costs incurred from the owner or registrant of the uninsured motor vehicle or from his or her estate. Failure of such a person to make payment within 30 days after judgment is a ground for suspension or revocation of his or her motor vehicle registration and license as defined in section 25 of the Michigan vehicle code, Act No. 300 of the Public Acts of 1949, being section 257.25 of the Michigan Compiled Laws. An uninsured motor vehicle for the purpose of this section is a motor vehicle with respect to which security as required by sections 3101 and 3102 is not in effect at the time of the accident.

*Aetna Cas. & Sur. Co.*, 409 Mich. 231, 260, 293 N.W.2d 594, 609 n. 33 (1980), but that is beside the point. The debt in this case would not have arisen absent the confluence of several circumstances including the debtor's uninsured status, the involvement of a motorcycle, and a personal injury. But absent the personal injury, there would have been no debt to find its way back to the debtor as a matter of law.

This holding is consistent with the rule stated in the analogous case of *In re Flint*, 238 B.R. 676, 680–81 (E.D.Mich.1999), in which the court held that an obligation to pay an educational loan is itself an educational loan, reasoning that in so holding Congress's goals "(1) to safeguard the financial integrity of the educational loan program, and (2) to curb abuses by limiting the instances in which student loans can be discharged in bankruptcy" are advanced. *Id.* at 679.

■ Congress's objectives in adopting § 523(a)(9) were "(1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving." *Lugo v. Paulsen*, 886 F.2d 602, 610 (3d Cir.1989) (quoting *In re Hudson*, 859 F.2d 1418, 1423 (9th Cir.1988)). The *Lugo* Court noted that the "remarks of legislators suggest that their concern with the dischargeability of debts resulting from acts of drunk driving stemmed as much from a desire to deter drunk driving as to protect the victims of accidents." *Id.* The Court thus observed that "nothing in the congressional record suggests that Congress intended to limit application of § 523(a)(9) solely to civil tort judgments" and excluded from discharge Merit Rating Plan surcharges even though they are "civil and remedial, rather than punitive, in nature." *Id.*

By likewise concluding an obligation incurred to pay a personal injury debt is itself a personal injury debt, the Congressional objectives of deterrence, allocation of fault and protection of victims of drunk drivers are likewise upheld.

Finally, the "fact" that the debt was "for . . . personal injury" does not appear to be seriously contested by the appellee in the court below. In response to the appellant's complaint filed in the bankruptcy court, the appellee's answer refers to the "creditor's claim for personal injury" and the "claimant's injuries." R.A. No. 2, "New Matters" ¶¶ 7 & 8. Further, in the appellee's motion for summary judgment in the bankruptcy court he states that he "incurred this debt as a result of a personal injury." R.A. No. 11, ¶ 13. In reviewing a motion for summary judgment, the Court looks at the "pleadings, depositions, answers to interrogatories, and admissions on file, [and] affidavits." Fed.R.Civ.P. 56(c). The answer is a "pleading." Fed R. Civ. P. 7(a). Rule 11 of the Federal Rules of Civil Procedure states that

> [b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b)(3). In addition, admissions in pleadings are generally binding on the parties to the action. *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980). The appellee's statement that the debt involved the "creditor's claim

for personal injury" constitutes an admission of the fact that the debt was "for ... personal injury."

The Court concludes, therefore, that the bankruptcy court's contrary determination was in error.

### B.

The appellee argued below that 11 U.S.C. § 523(a)(9) requires a causal connection between the debtor's intoxication and the injuries. The issue is material in this case because of the debtor's claim that his intoxication played no role in the accident, which was caused solely by the motorcyclist. Because the bankruptcy court held that the debt was not based on personal injury, it declined to determine whether a causal connection was necessary. Opinion at 12. Because this Court finds that the debt was for a personal injury, the causation issue must be resolved.

Although the issue was briefed in the lower court and by the appellant on appeal, it is more appropriate for the matter to be decided by the bankruptcy court in the first instance. *See, e.g., National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 461, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999) (alternate grounds for bringing the NCAA under Title IX not decided below and better left to lower court on remand for decision in first instance). This is especially true when, despite the apparent plain language of the statute (the alleged debt must have been "for death or personal injury *caused* by the *debtor's* operation of a motor vehicle," 11 U.S.C. § 523(a)(9) (emphasis added)), there is a conflict of authority on the question. *Compare In re Keating*, 80 B.R. 115, 118 (Bankr.E.D.Wis. 1987), *and In re Adams*, 761 F.2d 1422, 1426 (9th Cir.1985), *with In re Christiansen*, 80 B.R. 481, 484 n. 3 (W.D.Mo.1987) (the court noted it "doubt[ed] that Con-

gress intended the punitive result of nondischargeability to apply without some showing of causation, particularly where, as here, both drivers involved in the accident were "obviously intoxicated."), *and In re Ray*, 51 B.R. 236, 240 (9th Cir. BAP 1985) (nondischargeability proper "if it be proved that lack of reasonable care resulting from intoxication caused the accident and injury"). Consequently, the Court will remand the matter to the bankruptcy court for a determination of this issue and any other ancillary issues relating to the dischargeability of the debt.

### C.

Finally, the Court observes that one of the debtor's main goals in obtaining a discharge of this debt is to recover his Michigan driver's license, which apparently was suspended for the failure to satisfy the judgment to the Assigned Claims Facility. Mich. Comp. Laws § 500.3177(1) provides that the "[f]ailure of [an uninsured driver] to make payment within 30 days after a judgment [in favor of an insurer who paid PIP benefits because of the driver's uninsured status] is a ground for the suspension or revocation of his or her motor vehicle registration and license ...." Although discharging that debt in bankruptcy may suspend the operation of that statute and result in the restoration of the driver's license, *see* 11 U.S.C. § 525(a), the debtor has alternate means to achieve his goal. To avoid suspension of his driver's license, the debtor may "enter into a written agreement with the secretary of state permitting the payment of the judgment in installments ...." *See* Mich. Comp. Laws § 500.3177(2).

### III.

The Court finds that the bankruptcy court's determination that the debt to the Michigan Assigned Claims Facility was not

"for … personal injury" within the meaning of 11 U.S.C. § 523(a)(9) was erroneous. Accordingly, it is **ORDERED** that judgment of the Bankruptcy Court is **REVERSED,** and the matter is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.