**In re Laura Ann LEVERNIER, Debtor.**

**Laura Ann Levernier, Appellant,**

v.

**Educational Credit Management Corporation, Appellee.**

**No. ED CV 01–318 RT.**

United States District Court,
C.D. California,
Eastern Division.

Feb. 2, 2004.

---

**36.** 4 White & Summers, *supra,* § 30–3 c.3., at    page 29.

William M Burd, Burd & Naylor, Santa Ana, CA, for Appellant.

Wayne S Basist, Wayne S Basist Law Offices, Aliso Viejo, CA, for Appellee.

## ORDER AFFIRMING BANKRUPTCY COURT'S JUDGMENT IN FAVOR OF EDUCATIONAL CREDIT MANAGEMENT CORPORATION

TIMLIN, District Judge.

Appellant Laura Ann Levernier ("Levernier") appeals the judgment by the United States Bankruptcy Court for the Central District of California in favor of Appellee Educational Credit Management Corporation ("ECMC") against Levernier.

### I.

#### Background [1]

In 1983, Levernier began a full time course of study at Life Chiropractic West ("Life Chiropractic"). She took out four student loans from Wells Fargo Bank totaling $17,500, and four loans from the Health Education Assistance Loan Program ("HEAL") totaling $18,157, to complete her education. Levernier graduated from the program in 1986. Between 1986 and 1997, she made partial payments on her student loans while attempting to es-

1. This background is based on the materials constituting the record on appeal.

tablish a chiropractic practice. In October 1994, Levernier successfully consolidated her Wells Fargo Loans through the Student Loan Marketing Association ("Sallie Mae"). Sallie Mae's consolidation loan was subsequently assigned to the Educational Credit Management Corporation ("ECMC").

After unsuccessful attempts to start a chiropractic business and stints as a food server, cocktail waitress, and hostess, Levernier filed a chapter 7 bankruptcy petition on July 9, 1997. She received her discharge on November 3, 1997. After reopening her case, she filed a complaint to determine the dischargeability of her ECMC consolidation loan on April 15, 1998. On July 15, 1999, Levernier filed a motion for judgment on the pleadings contending that the ECMC loan was not an educational loan within the meaning of 11 U.S.C. § 523(a)(8) ("Section 523(a)(8)"). This motion was denied by the bankruptcy court on September 8, 1999. On February 8, 2001, the bankruptcy court, after an evidentiary hearing, ordered judgment for ECMC, finding that Levernier had not made a showing of undue hardship in order to discharge her ECMC loan under Section 523(a)(8)(B). Levernier appeals the judgment in favor of ECMC, including the interlocutory order denying her motion for judgment on the pleadings.

## II.

### Analysis

The jurisdiction of a federal district court to entertain an appeal from a bankruptcy court is governed by 28 U.S.C. § 158(a), which provides in pertinent part. "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees,

... and (3) with leave of the court, from other interlocutory orders and decrees."

This court reviews a bankruptcy court's conclusions of law de novo. *Siriani v. Northwestern Nat'l Ins. Co.*, 967 F.2d 302, 303–04 (9th Cir.1992). Findings of fact are reviewed for clear error. *See id.* The bankruptcy court's choice of remedies is reviewed for an abuse of discretion, since it has broad equitable remedial powers. *In re Goldberg*, 168 B.R. 382, 384 (9th Cir. BAP 1994). Under this standard, "a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *In re Sunnymead Shopping Ctr. Co.*, 178 B.R. 809, 814 (9th Cir. BAP 1995) (citing *Goldberg*, 168 B.R. at 384).[2]

### A. Whether a consolidation loan is an educational loan for purposes of § 523(a)(8)

Levernier contends on appeal that her ECMC consolidated loan is not an "educational loan" for purposes of § 523(a)(8) and is therefore not to be considered non dischargeable under that section. She asserts that her consolidation loan is not educational in nature because the proceeds were not used for educational purposes, but rather to pay off pre-existing educational loan debts. She also characterizes her consolidation loan as a refinance loan and because California law holds that the refinance of a loan used to purchase real estate alters the loan's character as a purchase money loan, *see Matthews v. Transamerica Fin. Servs. (In re Matthews)*, 724 F.2d 798, 800 (9th Cir. 1984), the consolidation of Levernier's edu-

---

**2.** Both Levernier and ECMC agree that this reviewing Court should apply the de novo standard of review regarding the issues on appeal. The Court will do so.

cational loan similarly alters its educational character.

In response, ECMC points to the wide body of caselaw in support of the proposition that consolidation loans related to pre-existing educational loans are educational loans within the meaning of § 523(a)(8). The District Court for the Eastern District of Michigan addressed this exact issue in *United Student Aid Funds v. Flint,* 238 B.R. 676 (E.D.Mich.1999), finding that consolidated loans are educational loans and are therefore not dischargeable under § 523(a)(8). ECMC also relies on the extensive body of caselaw discussing when consolidation loans triggered the former statute of limitations under § 523(a)(8) as further evidence that these loans are educational loans.

The court agrees with ECMC that the consolidated loan obtained by Levernier is an educational loan within the meaning of § 523(a)(8) and that it therefore is not dischargeable under this section. First, consolidation loans regarding pre-existing educational loans have an educational purpose. They are issued under the Higher Education Act and are used to pay off educational debts. *See Flint, supra* at 677–78 ("[c]ourts have reasoned that a consolidation loan is 'for an educational purpose' because the loan was issued under the Higher Education Act"), *Hiatt v. Indiana State Student Assistance Com'n,* 36 F.3d 21, 24 (7th Cir.1994) ("a consolidation loan ... is in fact a second government guaranteed student loan debt"). Levernier's contention that the ECMC loan was not used for educational purposes but rather to pay off an educational debt is unpersuasive. As the court noted in *In re Cobb,* 196 B.R. 34, 38 (Bankr.E.D.Va.1996):

[T]he original loan was admittedly for educational purposes. The consolidation loan served to pay off and alter the terms of the initial education loan and thus created a new obligation relative to the reason for the debt. The essential purpose of the consolidation was the repayment and restructuring of a debt incurred to pay the costs of higher education.

Second, a number of courts have determined that the consolidation of educational loans triggered the former statute of limitations period under § 523(a)(8)(A) anew.[3] *See Hiatt,* 36 F.3d at 25 (finding that the nondischargeability period begins on the date the consolidation loan first becomes due and concluding that such a loan is "an education loan within the meaning of section 523(a)(8)(A)"), *Cobb,* 196 B.R. at 37 (finding that "the consolidation loan, which is in essence a second government guaranteed student loan, is collectible for at least seven years before it is dischargeable"). These conclusions necessarily rest on the presumption that consolidation loans are educational loans within the meaning of § 523(a)(8). *See Flint, supra* at 679.

Third, the court does not agree with Levernier that the plain language of § 523(a)(8) with no specific reference to consolidation loans reflects Congressional intent to exclude such loans from its scope of coverage. In interpreting a statutory provision, courts are not "guided by a single sentence or member of a sentence, but ... [by] the provisions of the whole law, and to its object and policy." *Hiatt,* 36 F.3d at 23 (quoting *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986)). "The plain language of the statute will not control, therefore, if it

---

**3.** Prior to 1990, educational loans that had first become due more than 5 years before the filing of a bankruptcy petition were not excepted from discharge. In 1990, this period

was extended to 7 years. In 1998, it was eliminated altogether, reflecting a renewed congressional intent to facilitate loan repayment. *See Flint, supra* at 681.

yields 'a result demonstrably at odds with the intentions of its drafters' " *Id.* (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)). In enacting and amending § 523(a)(8), Congress expressed a strong policy in favor of student loan repayment. *See Flint, supra* at 679. This policy does not favor an interpretation that exempts initial educational loans but not subsequent consolidation loans related to the pre-existing educational loans from dischargeability as provided in Section under § 523(a)(8). In responding to the argument that Congress would have specifically exempted consolidated loans from dischargeability if it so intended, the *Flint* court noted, "[t]hat is too narrow a perspective. Courts have applied § 523(a)(8) even when the loan was not used to confer an educational benefit on the borrower." *Id.* at 681, (citing *In re Hawkins*, 139 B.R. 651, 652 (Bankr.N.D.Ohio.1991)). For similar reasons, this court agrees with the bankruptcy court that Levernier's ECMC loan is an educational loan within the meaning of § 523(a)(8).

**B. Undue Hardship**

■■ Levernier contends that even if this court finds that a consolidation loan is an educational loan within the meaning of § 523(a)(8), she will suffer undue hardship if the loan is not discharged and, therefore, she is entitled to the exception to nondischargeability as provided in Section 523(a)(8)(B). The Ninth Circuit has adopted a three-part test from the Second Circuit[4] governing the determination of undue hardship. *See United Student Aid Funds, Inc. v. Pena*, 155 F.3d 1108, 1112 (9th Cir.1998). Under this test, Levernier must prove by a preponderance of the

evidence that she meets all of the following criteria: 1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans, 2) that additional circumstances indicate that her financial situation is likely to persist for a significant portion of the repayment period, and 3) that she has made a good faith effort to repay her loans. *Id.*, citing *Brunner*, 831 F.2d at 396. Because the bankruptcy court based its finding of no undue hardship exclusively on the first factor, the court will focus on this factor as well.

■ "The first prong of the Brunner analysis requires more than a showing of tight finances." *In re Faish*, 72 F.3d 298, 306 (3rd Cir.1995). "The proper inquiry is 'whether it would be unconscionable to require [the debtor] to take any available steps to earn more income or to reduce her expenses.' " *In re Shankwiler*, 208 B.R. 701, 705 (Bankr.C.D.Cal.1997) (quoting *Faish*, 72 F.3d at 307). Levernier asserts that because her monthly expenses exceed her monthly income by $255.73, she cannot afford monthly payments to ECMC of approximately $256.31.[5] On the other hand, the bankruptcy court found that because certain of Levernier's expenditures were excessive, she could make the ECMC payments while maintaining a minimal standard of living for herself. In particular, the court found that: 1) Levernier could reduce her $900 rental payments by living in a less expensive area and/or by sharing an apartment with a roommate, 2) Levernier had purchased a brand new Subaru Forester for $26,000, which, although financed by her mother at a comparatively low rate of interest, had increased her

---

4. *Brunner v. New York Higher Educ. Services*, 831 F.2d 395, 396 (2d Cir.1987).

5. ECMC asserts that under a graduated repayment schedule, Levernier could reduce her monthly payments to $234.64.

automobile insurance and her annual DMV charge, and 3) Levernier could reduce or eliminate such monthly expenses as FasTrak, 24–hour Fitness, cable television, tax preparation services, vitamins, and long distance calls.

■ This court reviews the bankruptcy court's findings of fact for clear error. *See Siriani v. Northwestern Nat'l Ins. Co.*, 967 F.2d 302, 303–04 (9th Cir.1992). Under this standard, the court finds no reason to disturb the bankruptcy court's findings that Levernier could appropriately reduce certain expenditures and make her ECMC payments without falling below a minimal standard of living. In *In re Faish,* the Third Circuit found that a single woman with an eleven year old son who received no child support and who had an annual income of $27,000 could afford to make a monthly payment of nearly $300. Levernier has no dependents and an annual income of approximately $31,085.28. Although she has certain expenses that the debtor in *Faish* apparently did not have, such as monthly car payments, the bankruptcy court has already found that these payments are excessive. Levernier cannot show that all of her monthly expenses are necessary to maintain a minimal standard of living for herself.

Levernier's reliance on *Peel v. Sallie-Mae Servicing–Heal Loan,* 240 B.R. 387 (Bankr.N.D.Cal.1999) is unpersuasive. In *Peel,* the Bankruptcy Court for the Northern District of California found that the debtor could not maintain a minimal standard of living and pay off his $635 ECMC loan, therefore meeting the first requirement of *Brunner.* However, the debtor in *Peel* spent only $750 a month for a basement apartment without a kitchen, $40 a month on phone calls, and $81 a month on automobile insurance. Although he budgeted $190 more a month on automobile maintenance than Levernier, this is still $220 less than Levernier's monthly automobile payments. Moreover, both the HEAL loans and ECMC loans at issue in *Peel* were significantly higher than Levernier's. In short, there is nothing in *Peel* to indicate that Levernier could not make her ECMC payments and maintain a minimal standard of living under the first prong of the *Brunner* test. Because the bankruptcy court's finding that Levernier has not met the first requirement is not clear error, the court need not address the remaining two factors under *Brunner.* The court therefore concludes that Levernier has not made a showing by a preponderance of the evidence of undue hardship that would except her ECMC loan from non-dischargeability under § 523(a)(8).

## III.

### DISPOSITION

ACCORDINGLY, IT IS ORDERED THAT

The bankruptcy court's Judgment is AFFIRMED.